UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CITY OF NEW ORLEANS** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 09-151** |
| | * | |
| **BELLSOUTH TELECOMMUNICATIONS, INC.** | * | **SECTION "L"(5)** |
| | * | |

## ORDER & REASONS

Before the Court is the issue of proper measurement of damages in the above captioned case. The Court previously presided over a bench trial, issuing rulings on the merits of the case. *See* (R. Doc. 192). Upon finding damages are warranted under the doctrine of unjust enrichment, the Court directed the parties to file supplemental briefing on unjust enrichment and the calculation of damages under this methodology. *See id.* The Court has received and reviewed these briefs, as well as considered the applicable facts and law, and is now prepared to rule on the issue at hand.

**I.    BACKGROUND**[1]

As mentioned, the Court presided over a bench trial in this case to resolve a long standing dispute between the plaintiff, City of New Orleans ("City") and defendant, BellSouth Telecommunications, Inc. ("BellSouth"), regarding compensation allegedly owed by BellSouth to the City for BellSouth's use of the City's rights-of-way to provide telecommunications services. *See id.* The Court issued Findings of Fact & Conclusions of Law resolving the dispute,

---

[1] A detailed factual and procedural history can be found in the Court's Findings of Fact & Conclusions of Law. (R. Doc. 192). The abbreviations found therein are undoubtably familiar to the parties and will be used for practical purposes in the present Order & Reasons.

1

except for the issue of damages. *See id.* As to damages, the Court concluded that the appropriate measure of damages was unjust enrichment, but that based upon the evidence it was unable to completely and accurately calculate these damages. Specifically, the Court stated, "[s]ince no agreed upon method of payment has been in place from 2006, the doctrine of unjust enrichment must be used to define the extent of BellSouth's obligation to pay the City for the benefits it has been receiving post-2006 which originally derived from the 1906 Agreement and were later recognized in the 2001 Settlement Agreement." *Id.* The Court went on to find "that one method for measuring the amounts owed for the unjust enrichment in the present matter is the percentage method used in the 1906 Agreement. Since such a method is linked to the profits of the City, it more accurately reflects the value of the benefit or enrichment BellSouth has received." *Id.*

The evidence is clear that BellSouth is and has been receiving substantial monetary benefits from its use of the City's rights-of-way. Last year, its parent company, AT&T, Inc., was ranked number seven on the list of Fortune 500 companies, *see* Fortune 500, CNN Money (June 6, 2011, 11:03 a.m.), http://money.cnn.com/magazines/fortune500/2010/full-list/, and according to the parties' own calculations, Bellsouth made somewhere between $125-129 million from its business in New Orleans, *see* (R. Docs. 193-7, 194), while for that same year, BellSouth only paid $376,886.52 to the City. *See* (R. Doc. 192). This is patently unfair. Unjust enrichment is a method of remedying this unfairness. The issue now before the Court is how to properly calculate the damages owed by BellSouth to the City under the doctrine of unjust enrichment.

II. **SUPPLEMENTAL BRIEFING**

    A. **The City & Council**

The City filed a Supplemental Memorandum (R. Doc. 194), to which the New Orleans City Council joins, *see* (R. Doc. 195), seeking unjust enrichment damages based upon three-percent of all gross revenues of BellSouth, excluding, as required by law, revenues from long distance services, internet services, wireless services, and emergency services. The City calculates three-percent of these gross revenues to be $11,393,362.16 for the years 2007 to 2010, ranging between approximately $2.6 and $3.1 million per year. Because the City did not have information available for the year 2010, it used the same data from 2009 for that year, with the reservation that this amount can be added to or refunded in part once the actual figures are determined. With regard to payments post-2010 the City suggests using a similar formula.

B.     BellSouth

BellSouth also filed a Supplemental Memorandum, raising a number of objections to the payment of damages for unjust enrichment or under any other concept. (R. Doc. 193). First, BellSouth argues that it owes no damages because the 2001 Settlement Agreement terminated the 1906 Agreement entirely, leaving no three-percent compensation to base an unjust enrichment damages calculation upon. According to BellSouth, it is entitled to use the City's rights-of-way without charge in perpetuity. Alternatively, in the event the Court resurrects the 1906 Agreement for the damages, BellSouth seeks a credit for the difference between the payments it has made to the City under the 2001 Settlement Agreement and the amount it would have paid the City had the 1906 Agreement not been terminated. BellSouth contends that the City should not be permitted to recover under unjust enrichment because it was the City's own fault or negligence which prevented the enactment of the LMA Agreement. BellSouth opposes the increase of its payments to the City on the basis that such violates federal law because its

3

chief competitor, Cox Communications, pays nothing for use of the City's rights-of-way for the provision of telephone service. Finally, BellSouth claims that a number of equitable considerations weigh against an award of damages in the City's favor.

## III.    LAW & ANALYSIS

The Louisiana doctrine of "enrichment without cause," or as it is commonly known, unjust enrichment, is codified by Louisiana Civil Code article 2298 which provides,

> A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term 'without cause' is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
>
> The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.
>
> The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.

The Court previously concluded in its Findings of Fact & Conclusions of Law that the elements of unjust enrichment have been satisfied in the present matter. *See* (R. Doc. 192 ¶ 124). The Court now reaffirms this conclusion to the extent that unjust enrichment applies in favor of the City.

To flesh out the concept of unjust enrichment in order to assess the amount of damages it is helpful to consider past agreements between the parties. Over the course of over 100 years, two agreements present some guidance: the 1906 Agreement and the LMA Agreement. Upon further examination of the applicable law and facts, as well as the briefs submitted by the parties, the Court finds that instead of basing unjust enrichment damages upon the compensation required by the 1906 Agreement, the compensation required by the LMA Agreement provides

the proper method for measuring these damages. The payments that would have been made by BellSouth to the City under the LMA Agreement represent "the extent to which [BellSouth] has been enriched or the [City] has been impoverished, whichever is less." La. Civ. Code art. 2298. The parties bargained for and contemplated that the LMA Agreement would be a potential method, along with the Simplified Tax Legislation, for compensation paid by BellSouth to the City after its direct payments required by the 2001 Settlement Agreement terminated in 2005. *See (*Joint Ex. 12)(2001 Settlement Agreement); (Ponder Test. Vol. II, 235:12-20, 241:22-242:16, 243:25-244:1, 274:5-10, Aug. 31, 2010). Because evidence was not presented on the amount or method of compensation that would be payable under the Simplified Tax Legislation, and this Legislation was never passed, *see* (Abbott Test. Vol. II 299:19-20); (Zeno Dep. 27:7-10), the Court finds that the compensation due under the LMA Agreement provides the best basis for measuring unjust enrichment damages. *See Fogleman v. Cajun Bag & Supply Co.*, 93-1177 (La. App. 3 Cir. 6/15/94); 638 So. 2d 706, 710 (recognizing unjust enrichment is an equity-based calculation, depending upon the circumstances, including relevant history). Notably, BellSouth offered to allow the City to enter into the LMA Agreement past the deadline required for doing so by the 2001 Settlement Agreement, the very time period at issue here. *See* (R. Doc. 193, p. 15)(citing R. Doc. 47-1). Although the Court previously held that because the condition lapsed, the LMA Agreement could not be retroactively enacted, this holding is not subverted by basing unjust enrichment damages on the compensation method provided by the LMA Agreement. *See e.g. Howell v. Rhoades*, 547 So. 2d 1087, 1090 (La. App. 1 Cir. 1989)("Plaintiff is entitled to the profit he would have made had a valid contract existed."). Furthermore, the award of unjust enrichment damages is consistent with the underlying equitable concerns of the

doctrine, *see Corbello v. Iowa Prod.*, 2002-0826 (La. 2/25/03); 850 So. 2d 686, 713, given that "every other city in the State of Louisiana" has a similar LMA Agreement, (Ponder Test. Vol. II 248:16-17); *see* (Thompson Test. Vol. II 322:8-13), and other utilities which use the City's rights-of-way pay millions of dollars annually to the City. *See* (Foster Test. Vol. I, 125:10-126:17). Accordingly, based upon the figures presented by BellSouth's own tax accountant, the terms of the LMA Agreement require BellSouth to compensate the City for the following unjust enrichment damages: $1,324,954.28 for 2007; $1,376,895.64 for 2008; $1,244,888.92 for 2009; and $1,172,362.88 for 2010, for a total of $5,119,101.73. *See* (R. Doc. 193-7)(Ex. G). For subsequent years, BellSouth would continue to pay the City pursuant to the terms of the LMA Agreement, unless the rights and obligations of the parties change so as to no longer require such payments.

    As summarized above, BellSouth raises a number of arguments opposing unjust enrichment damages, each of which the Court now addresses. First, BellSouth argues that if the Court requires it to pay damages based upon the 1906 Agreement, it is entitled to a $14,116,270.69 credit for overpayments made pursuant to the 2001 Settlement Agreement because these payments constituted a "buyout" of future obligations under the 1906 Agreement. *See* (R. Doc. 193). However, the Court is not relying upon the 1906 Agreement to provide the basis for calculating the unjust enrichment damages, nor is it resurrecting this Agreement; thus, BellSouth's argument is moot. To the extent BellSouth seeks a credit for *any* future obligations, the Court disagrees on the basis of the language of the 2001 Settlement Agreement, as well as relevant testimony, which demonstrate that the parties contemplated future payments by BellSouth even after its direct payment obligations under the 2001 Settlement Agreement

ceased.  *See (*Joint Ex. 12)(2001 Settlement Agreement); (Ponder Test. Vol. II, 235:12-20, 241:22-242:16, 243:25-244:1, 274:5-10).

Second, BellSouth argues that the City should not be able to recover unjust enrichment damages because the City's "impoverishment" is due to its own negligence or fault in failing to timely enter the LMA Agreement.  *See* (R. Doc. 193, pp. 14-17).  The Court recognizes that impoverishment on the part of the plaintiff is an essential element of Article 2298, as well as this Article's jurisprudential predecessors.  The sources cited by BellSouth in support of its impoverishment argument similarly provide that a plaintiff cannot recover for unjust enrichment if the impoverishment is due to the plaintiff's fault or negligence, or is the result of actions undertaken at his or her own risk.  *See Quilio & Assoc., Inc. v. Plaquemines Parish Gov't*, 2005-0803, pp. 12-13 (La. App. 4 Cir. 5/10/06); 931 So. 2d 1129, 1137-38; *Gray v. McCormick*, 94-1282, pp. 13-14 (La. App. 3 Cir. 10/18/95); 663 So. 2d 480, 487; *Charrier v. Bell*, 496 So. 2d 601, 606-07 (La. App. 1 Cir. 1986), *writ denied*, 498 So. 2d 753 (La. 1986); *Brignac v. Boisdore*, 288 So. 2d 31, 35 n.2 (La. 1974); Conrad Meyer, IV, Comment, *Actio De In Rem Verso in Louisiana: Minyard v. Curtis Products, Inc.*, 43 Tul. L. Rev. 263, 286 (1969).

However, these sources rely on a law review article written over 25 years before the enactment of Article 2298 and which relied entirely upon French case law regarding *actio de in rem verso*, the prototype for Louisiana's unjust enrichment.  *See* Meyer *supra*.  According to this article, impoverishment for the French *actio de in rem verso* is vitiated by a plaintiff's tortious behavior, as well as by "action taken in '[the plaintiff's] own interest and at his own risk.'" *Id*.  This article made its way into Louisiana jurisprudence as dicta in a footnote in the Louisiana Supreme Court case *Brignac v. Bolsdore*, 288 So. 2d 31, 35 n.2 (La. 1974), to which the lower

courts subsequently took notice and applied to deny unjust enrichment to plaintiffs who conducted improvements on property that was not their own. *See e.g. Charrier*, 496 So. 2d at 606-07; *Gray*, 663 So. 2d at 487-88. Notably, this definition of impoverishment did not make its way into the Code. *See* La. Civ. Code art. 2298. While the Revision Comments generally recognize that Article 2298 "accords with civilian doctrine and jurisprudence," *see id.*, revision cmt. (a), there is no indication in either the language of the article or the comments that the Louisiana Legislature intended to create the exceptions to the impoverishment element of unjust enrichment suggested by BellSouth. Rather, the Revision Comments simply define impoverishment as "when [] patrimonial assets diminish or [] liabilities increase." *See id.*, revision cmt. (b).

Under Louisiana law, when faced with an inconsistency between what the jurisprudence says on a legal doctrine and that of the Code language, the Court is to follow the Code. As the Fifth Circuit recognizes, "[b]ecause Louisiana stands alone among the 50 states as a hybrid Civil Law/common law jurisdiction, its situation is unique: The State's constitution, its codes and its statutes, are the primary sources of law, without *stare decisis* precedential effect." *In re Orso*, 283 F.3d 686, 695 (5th Cir. 2002); *accord Delta Chem. Corp. v. Lynch*, 2007-0431 (La. App. 4 Cir. 2/27/08); 979 So. 2d 579, 588 ("[B]ecause of Louisiana's civilian tradition, this court must begin every legal analysis by examining primary sources of law, consisting of the constitution, codes, and statutes; jurisprudence, even when it arises to the level of *jurisprudence constante*, is a secondary law source. Judicial decisions are not intended to be an authoritative source of law, and, thus, the civilian tradition does not recognize the doctrine of *stare decisis*."). Although Louisiana has inherited its civilian tradition largely in part from France, courts are not to apply

French law in place of Louisiana law.  *See Penn Bridge Co. v. City of New Orleans*, 222 F. 737, 741-42 (5th Cir. 1915)(refusing to follow the decision of a French court on the basis that such is not authoritative over a diversity jurisdiction case applying Louisiana law.).  Instead, a court is to apply Louisiana law as written if it is clear and unambiguous.  La. Civ. Code art. 9.  Louisiana courts are reluctant to apply pre-statute jurisprudence, particularly dicta, to a case when a clear and unambiguous statute is in effect.  *See e.g. Aucoin v. Rochel*, 2008-1180, p.11 (La. App. 1 Cir. 12/23/08); 5 So. 2d 197, 203; *Domite v. Imperial Trading Co., Inc.*, 94-16 pp.6-7 (La. App. 3 Cir. 8/3/94); 641 So. 2d 715, 719-20.

Guided by the foregoing, the Court finds BellSouth's argument unavailing, and instead relies upon the clear and unambiguous language of article 2298 to conclude that impoverishment has occurred in the present matter since the City's "patrimonial assets [have] diminish[ed]" due to BellSouth's continued use of the City's rights-of-way without paying compensation to the City.  The Louisiana Legislature could have included in Article 2298 the French law on *action de in rem verso* impoverishment, but did not do so; thus, the Court relies upon the more limited definition of impoverishment that was actually codified.  Even if the Court were to apply the French law on impoverishment, the facts of the present matter are distinguishable from those cases in which courts found impoverishment vitiated; the City has not acted tortiously, nor has it acted similar to a usufructuary who makes improvements on property he occupies.

Third, BellSouth argues that if it is required to pay the City unjust enrichment damages for amounts past-owed, it is unable to pass-through these costs to its customers, constituting a confiscation of property in violation of the Fifth and Fourteenth Amendments of the United States Constitution, as well as Article I, Sections 2 and 4 of the Louisiana Constitution.  *See* (R.

Doc. 193, pp. 15-16).  BellSouth claims that it is entitled to such a "pass-through" pursuant to Louisiana Revised Statute § 33:4510, as well as pursuant to the terms of the 2001 Settlement, but that the provisions of public utility law, including the prohibition against retroactive rate-making, "cast doubt" on its ability to recover charges for past time periods from current customers, resulting in the alleged constitutional violations.  *See id.*  However, as mentioned above, the Court is not retroactively enacting the LMA Agreement; thus, the provision of the 2001 Settlement Agreement which requires payments pursuant to the LMA Agreement be subject to the pass-through provisions of Louisiana Revised Statute § 33:4510, *see* (Joint Ex. 12), is not violated by the present Order & Reasons.  Furthermore, BellSouth fails to cite any specific "provisions of public utility law" which prevent passing-through past-owed costs, *see id.*, nor does the plain language of Section 4510 contain such a prohibition.  *See* La. Rev. Stat. § 33:4510.  For these reasons, as well as BellSouth's failure to support its constitutional argument with any legal basis, other than citing constitutional articles, *see* (R. Doc. 193, p. 44); (R. Doc. 47-1, p. 24), the Court finds no unconstitutional confiscation of property will occur by the imposition of unjust enrichment damages.  This conclusion is further supported by the fact BellSouth has on previous occasions paid to the City sums representing past-amounts due without constitutional ramifications.  *See e.g.* (Joint Exs. 10, 11)(Partial Compromise and Mutual Agreement for Credit Payment); (Ex. 12 ¶ 3.5)(2001 Settlement Agreement).

Fourth, BellSouth argues that increasing its payments to the City violates the federal Telecommunications Act of 1996 ("FTA") on the basis that such payments would provide its telecommunications competitor, Cox Communications, who does not pay a franchise fee for its telecommunications use, with a competitive advantage.  *See* (R. Doc. 193).  BellSouth cites in

10

support, 47 U.S.C. § 253(c) which provides,

> Nothing in this section affects the authority of a State or local government to manage the public rights-of-way or to require fair and reasonable compensation from telecommunications providers, on a competitively neutral and nondiscriminatory basis, for use of public rights-of-way on a nondiscriminatory basis, if the compensation required is publicly disclosed by such government.

In the Fifth Circuit there is no private, enforceable right under the FTA. *See Sw. Bell Tel., LP v. City of Houston*, 529 F.3d 257 (5th Cir. 2008). Nonetheless, "a party may bring a claim under the Supremacy Clause alleging a local enactment is preempted even if the federal law at issue does not create a private right of action." *Id*. at 262. To determine whether a local regulation is preempted under the FTA, the Court is to first consider whether under subsection (a) the local regulation "may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications services." 47 U.S.C. § 253; *see id*. If the regulation is found to be prohibitive, the Court is to determine whether it may stand under the "safe harbor" provisions, one being subsection (c) relied upon by BellSouth. *See id.*

Turning to subsection (a), whether the imposition of the unjust enrichment payments on BellSouth "may prohibit or have the effect of prohibiting the ability of" BellSouth to provide telecommunications services, the Court finds no such prohibition. Since the Fifth Circuit has not directly addressed the meaning of subsection (a) and the statute itself contains no defining language, the Court looks to the recent and well-grounded interpretations espoused by the Eighth and Ninth Circuits. These Circuits identically conclude that pursuant to the FTA, "'a plaintiff suing a municipality under section 253(a) must show *actual or effective* prohibition, rather than the mere possibility of prohibition.'" *Sprint Telephony PCS, L.P. v. Cty. of San Diego*, 543 F.3d 571, 578 (9th Cir. 2008)(quoting *Level 3 Commc'n, LLC v. City of St. Louis*, 477 F.3d 528, 532

11

(8th Cir. 2007))(emphasis added). Notably, this interpretation is consistent with that of the Federal Communications Commission. *See id.* (citing *In re Cal. Payphone Ass'n*, 12 F.C.C.R. 14191, 14209 (1997)).

Based upon this interpretation of the FTA, the Court finds BellSouth will not be prohibited from providing its telecommunications services due to its obligation to pay unjust enrichment damages to the City. BellSouth has utilized the City's rights-of-way for over 100 years and continues to do so without any threat of prohibition, unless perhaps it fails to pay the appropriate compensation due therefor. *See* (Joint Exs. 1, 12). Over the lengthy course of its use of these rights-of-way, BellSouth has at times paid more and less as compared to the damages required here, the amount of which has had no prohibitive effect on its provision of services. *See e.g.* (Joint Exs. 1, 12). As the Sixth Circuit has recognized, a municipality's assessment of a fee for franchise rights, and the franchisee's rights being conditioned on the payment of this fee "cannot 'be described as a prohibition within the meaning of section 253(a),'" as opposed to a municipality's withholding consent to franchise. *TCG Detroit v. City of Dearborn*, 206 F.3d 618, 624 (6th Cir. 2000)(quoting *AT&T Commc'n of the Sw., Inc. v. City of Austin*, 975 F.Supp. 928, 939 (W.D. Tex. 1997)). BellSouth previously agreed to pay the City the exact amounts the Court is now requiring it to pay for unjust enrichment damages. *See* (Joint Ex. 12). Curiously, under BellSouth's argument, the payments it currently makes pursuant to the 1984 Concession Agreement, *see* (R. Doc. 192, pp. 13-14), would violate the FTA, as well as the previous payments it has made since Cox or any other competitors have entered the telecommunications market, yet it does not and has not raised a similar challenge to these payments. It is on these bases the Court finds that the imposition of unjust enrichment damages does not actually or

effectively prohibit BellSouth from providing its telecommunications services.

Fifth and finally, BellSouth asks that the Court weigh other equitable considerations in formulating its damages ruling, including the City's general benefit from BellSouth's services in the City, the discounted phone service it provides to the City, and that public rights-of-way belong to the public, not the City. The Court acknowledges these considerations, but finds that such also have to be considered alongside the evidence demonstrating that the right granted to BellSouth to use the City's rights-of-way reaps BellSouth substantial profits, BellSouth pays compensation similar to that required here to other cities in Louisiana, and other utilities operating in the City pay more compensation to the City than BellSouth currently does. Based on all these considerations the Court finds that BellSouth should be entitled to a credit for the discounted phone service it provides to the City currently, in the future, and dating back to the cessation of the 2001 Settlement Agreement payments. While there was testimony at the trial regarding these discounts, *see* (Trammel Test. Vol. I 185-194), it is not clear the exact amount of the discount for the relevant time periods. Without a credit for these discounts, in effect the City would be receiving an uncompensated-for benefit, much akin to that at issue here.

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that BellSouth owes unjust enrichment damages to the City in the amount of $5,119,101.73, based upon the amounts that would have been due had the City adopted the LMA Agreement, with a credit to BellSouth for the amount of discount in services it has provided to the City since the cessation of the 2001 Settlement Agreement forward. IT IS FURTHER ORDERED that documentation and calculation of this discount are to be filed by BellSouth within 10 days of this Order & Reasons. IT IS FURTHER

ORDERED that similar payments should be paid for subsequent years, unless the rights and obligations of the parties change so as to no longer require such payments.  There being no further claims to resolve, IT IS FURTHER ORDERED that this case is dismissed with prejudice.

    New Orleans, Louisiana, this 6th day of June, 2011.

                                                      _____
                                                         U.S. District Judge