## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **CITY OF NEW ORLEANS** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 09-151** |
| | * | **REF. 11-2116** |
| | * | |
| **BELLSOUTH TELECOMMUNICATIONS,** | * | **SECTION "L"(5)** |
| **INC.** | * | |

### ORDER & REASONS

Before the Court is plaintiff BellSouth Telecommunications, LLC d/b/a AT&T

Louisiana's ("BellSouth") Motion for Preliminary Injunction.  (R. Doc. 2)(Case No. 11-2116).

The parties filed briefs in support of their respective positions and presented oral argument to the

Court.  The Court has considered the parties' arguments, as well as the relevant facts and

applicable law, and is now ready to rule.  For the following reasons, IT IS ORDERED that

BellSouth's Motion for Preliminary Injunction is DENIED, and the above-captioned case is

STAYED until resolution of the appeal of the consolidated case.

## I.      BACKGROUND

These consolidated cases arise from BellSouth's alleged failure to pay franchise fees to

the City of New Orleans (the "City") for use of the City's rights-of-ways to transmit

telecommunications services to local customers and the passage of an ordinance by the City to

remedy this alleged failure of payment.  The New Orleans City Council ("Council") is involved

in the matter as the body governing the issuance of franchise ordinances and rights-of-way.

The litigation stems from a lengthy history of ordinances, jurisprudence, legislation, and

agreements, including but not limited to: Franchise Ordinance No. 4906 issued by the Council in

1879 ("1879 Franchise Ordinance"); Act 124 passed by the Louisiana legislature in 1880 ("Act 124"); the Louisiana Supreme Court's 1888 decision in *City of New Orleans v. Great Southern Telephone & Telegraph, Co.*, 3 So. 533 (La. 1888)("*Great Southern*"); an agreement in 1906 involving an offer by BellSouth to the City which was adopted by the Council in whole or part ("1906 Agreement"); a letter sent by BellSouth to the Commissioner of Public Property in 1916 ("1916 Letter Agreement"); a settlement agreement in 1960 ("1960 Settlement Agreement"); a written proposal sent by BellSouth to the City in 1984 ("1984 Concession Agreement"); a settlement agreement in 1993 ("1993 Settlement Agreement"); the Ordinance of General Applicability issued by the Council in 1996 ("OGA"); a settlement agreement in 1998 ("1998 Settlement Agreement"); a settlement agreement in 2001 ("2001 Settlement Agreement"); this Court's bench trial and Findings of Fact & Conclusions of Law, and related rulings, resolving the parties' 2009 dispute; and Ordinance No. 24,547 passed by the Council on August 18, 2011 ("2011 Ordinance").

The 2009 case, *New Orleans City v. BellSouth Telecommunications, Inc*., Case No. 09-151, came before the Court by virtue of a suit filed by the City on January 20, 2009, against BellSouth, seeking damages for outstanding compensation owed by BellSouth for BellSouth's use of the City's rights-of-way since 2007.  The suit also sought declaratory relief to establish the following: (1) the 1879 Franchise Ordinance was breached by BellSouth, and thus the City may terminate this Ordinance, (2) the 1984 Concession Agreement is null and void, and (3) the OGA governs BellSouth's use of the City's rights-of-way, and thus, BellSouth is liable for all sums due to the City pursuant to the OGA.  Alternatively, the City asked that BellSouth be ordered to enter into a Louisiana Municipal Association ("LMA") Agreement with the City.  The

Council filed a Complaint in Intervention essentially adopting the City's Complaint and requested a declaration from the Court that the Council is the exclusive franchise authority in New Orleans.

BellSouth filed an Answer denying it owed any outstanding compensation to the City and raised a number of affirmative defenses. BellSouth contended it had not breached the 1879 Franchise Ordinance since the compensation it pays annually pursuant to the 1984 Concession Agreement satisfies the consideration due under that Ordinance. Additionally, BellSouth claimed the 1984 Concession Agreement is valid given that the City has accepted payment thereunder for a number of years. BellSouth further argued that neither the OGA nor the LMA Agreement govern its use of the City's rights-of-way.

BellSouth then filed a Second Supplemental and Amended Answer and Counterclaim against the City. The Counterclaim sought to require the City to reimburse BellSouth for all amounts paid by BellSouth to the City under Section 3.3 of the 2001 Settlement Agreement if the Court concluded this Agreement is invalid. In this case, BellSouth additionally requested the Court re-open the claims made in the 2000 litigation so as to allow BellSouth to seek reimbursement for all amounts paid to the City pursuant to the 1906 Letter Agreement.

After the Court resolved a number of issues through motion practice, the 2009 case came on for trial without a jury on August 30, 2010. The Court carefully considered the testimony of all of the witnesses and the exhibits entered into evidence, as well as the record. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court issued lengthy Findings of Fact and Conclusions of Law. (R. Doc. 192). Therein, the Court concluded that: the 1879 Franchise Ordinance remains valid and enforceable; *Great Southern* precludes the City from imposing new

or more onerous consideration upon BellSouth for the rights granted to BellSouth under the 1879 Franchise Ordinance; the payments made by BellSouth to the City pursuant to the 1906 Agreement constituted compensation for some benefit other than to be the exclusive telecommunications provider in the City; the three-percent payments under the 1906 Agreement were for a benefit in addition to and separate from the franchise right BellSouth received under the 1879 Franchise Ordinance, a benefit stemming from the rights derived from the 1879 Franchise Ordinance; the consideration owed by BellSouth to the City under the 1879 Franchise Ordinance and 1916 Agreement was monetized by the 1984 Concession Agreement; the 1984 Concession Agreement remains a valid obligation between the parties; the 2001 Settlement Agreement precludes the parties from raising arguments involving the 1879 Franchise Ordinance, the 1906 Agreement, and the 1984 Concession Agreement; as evidenced by the 2001 Settlement Agreement, the parties intended for the City to be compensated by BellSouth after the payments under this Agreement ended in 2006; BellSouth has been receiving the same benefits from using the City's rights-of-way since 2006, but has not paid the City anything in addition to its payments required by the 1984 Concession Agreement; the OGA does not govern BellSouth's franchise rights; and the City is entitled to unjust enrichment damages from BellSouth for the City's enjoyment of its rights-of-way since 2006 without paying appropriate compensation.

In order to resolve the calculation of unjust enrichment damages, the Court directed the parties to submit supplemental briefing on the issue. Thereafter, the Court, using the proposed LMA Agreement as a guide, determined BellSouth owed the City $5,119,101.73 in unjust enrichment damages, less the amount in discounted services BellSouth provided to the City during the relevant time period. (R. Doc. 198). After receiving further briefing from the parties

as to the amount of discounted phone service, the Court determined the final amount owed by

BellSouth to the City for unjust enrichment, minus the discounted service, is $1,549,240.93.  (R.

Doc. 216).  A Judgment was later entered reflecting the rulings of the Court and closing the case.

*See* (R. Doc. 218).  The parties have since filed appeals and cross-appeals of the Court's rulings.

*See* (R. Docs. 219, 223, 224).  Currently, Case No. 09-151 remains on appeal to the Fifth Circuit

Court of Appeals.

On August 25, 2011, BellSouth filed suit against the City, Council, Council members,

and the Mayor of New Orleans, instituting the present matter, Case No. 11-2116, *BellSouth*

*Telecommunications, LLC v. City of New Orleans*.  (R. Doc. 1)(Case No. 11-2116).  BellSouth

seeks a declaratory judgment declaring the 2011 Ordinance invalid, null, void, and

unenforceable, as well as both preliminary and permanent injunctive relief preventing the

defendants from enforcing the 2011 Ordinance.  The 2011 case shares the same factual and

procedural history as the 2009 case, with the addition of the newly-enacted 2011 Ordinance;

accordingly, this case was consolidated with the 2009 case.

The 2011 Ordinance was passed and approved by the Council and Mayor, respectively,

in August 2011.  The 2011 Ordinance states as its purpose,

> [T]o set compensation to be paid by BellSouth Telecommunications, Inc. d/b/a AT&T
> Louisiana (BellSouth) for benefits received, and to be received, by said company in
> connection with its use of the City of New Orleans' (City) rights-of-way and which
> benefits are in excess of such benefits received by said company pursuant to a certain
> Ordinance enacted by the New Orleans City Council in 1879 and other to provide with
> respect thereto.  (R. Doc. 2-2)(Case No. 11-2116).

This Ordinance directly refers to the Court's Findings of Fact and Conclusions of Law in the

2009 litigation, particularly its award of unjust enrichment damages to the City.  In an effort to

legislate future unjust enrichment payments, the Ordinance requires BellSouth to pay five-

percent of its gross revenues "derived from its business in the City of New Orleans," excluding revenues from long distance, internet, wireless, and emergency services.

The City, Mayor, Council, and Council Members filed Answers in the 2011 case, denying many of the allegations raised by BellSouth and opposing any declaratory and injunctive relief arising from the passage of the 2011 Ordinance.  *See* (R. Docs. 239, 240).

## II.    PRESENT MOTION

### A.    BellSouth's Motion

BellSouth filed the present Motion seeking a preliminary injunction against enforcement of the 2011 Ordinance.  (R. Doc. 2)(Case No. 11-2116).  BellSouth goes through each of the requirements for a preliminary injunction in support of its Motion.  First, BellSouth claims it is substantially likely to prevail on the merits because: (1) the 2011 Ordinance violates *Great Southern* and this Court's previous rulings, (2) the 2011 Ordinance violates the contract clauses of the United States and the Louisiana constitutions, (3) the 2011 Ordinance takes BellSouth's private property without just compensation in violation of the United States and Louisiana constitutions, and (4) the 2011 Ordinance violates the equal protection clauses of the United States and Louisiana constitutions.

Second, BellSouth claims there is a substantial likelihood it will suffer irreparable injury if the preliminary injunction is not granted.  It argues the "irreparable injury" requirement is satisfied because a deprivation of constitutional rights is involved.  BellSouth also claims that if it is compelled to comply with the 2011 Ordinance it is highly unlikely it will be able to recoup amounts paid to the City thereunder because of the City's precarious financial situation.

Third, BellSouth argues the threatened injury to it outweighs any threatened harm to the

City since it will be required to post security if the preliminary injunction is granted.

Fourth and finally, BellSouth claims a preliminary injunction will not disserve the public interest, especially since the injunction will prevent it from passing on the costs of the 2011 Ordinance to its local customers.

### B.  The City's Response

The City filed a Response in opposition to BellSouth's Motion for Preliminary Injunction. (R. Doc. 234).  The City notes BellSouth's burden in proving its entitlement to the preliminary injunction and claims it fails to overcome this burden.  The City then addresses each of the prerequisites for preliminary injunction.

With regard to substantial likelihood of success on the merits, the City challenges each of the claims raised by BellSouth.  It first argues BellSouth misinterprets *Great Southern* as prohibiting the City from ever increasing the compensation it owes for use of the City's rights-of-way; when rather, *Great Southern* was concerned with maintaining the *status quo* between the parties and did not contemplate that today, with the technological advances and BellSouth's increased profits, the compensation would remain static.  The City requests the Court certify to the Louisiana Supreme Court the question of *Great Southern's* current applicability and reasonableness in today's society.  The City also suggests the *Great Southern* decision creates an unconstitutional donation of public property to BellSouth.  Additionally, the City claims the 2011 Ordinance was crafted to avoid conflicting with *Great Southern* and it only seeks compensation from BellSouth for benefits in excess of those it receives from *Great Southern*. The City contends BellSouth's Motion is in essence an improper motion for new trial and/or reconsideration, both of which BellSouth has waived by appealing the 2009 case.

With regard to BellSouth's contract clause claims, the City argues the 2011 Ordinance does not violate the contract clauses because there is no substantial impairment to BellSouth's franchise rights under the 1879 Franchise Ordinance since the 2011 Ordinance excludes these rights.  According to the City, the 2011 Ordinance merely takes the place of the unjust enrichment award ordered by the Court.

With regard to BellSouth's takings claim, the City argues BellSouth's position is completely contrary to the Court's 2009 ruling which held BellSouth is receiving benefits from its use of the City's rights-of-way without paying compensation to the City. The City also claims BellSouth's argument is inconsistent with its payment to the City of millions of dollars annually for the benefit of using the City's rights-of-ways, but then stopping such payment in 2006.

With regard to BellSouth's equal protection arguments, the City claims it has tried to treat BellSouth the same as those similarly situated, but BellSouth has refused to comply with the OGA, which applies to all telecommunications providers in the City.  This, according to the City, constitutes a rational basis for the differential treatment of BellSouth as compared to similarly situated providers.

Next, the City argues BellSouth has not sustained its burden of demonstrating a substantial likelihood of irreparable harm.  The City agrees with BellSouth that in certain cases, the deprivation of a constitutional right eliminates the need for further showing of irreparable harm, but claims BellSouth still must demonstrate a substantial likelihood of being meritorious on the constitutional claim and there is no such showing here.  The City claims there are a number of mechanisms available which will allow BellSouth to collect any compensation paid under the 2011 Ordinance in the event the Court rules in BellSouth's favor, including

withholding current annual payments, and applying a credit to the damage payments owed the City under this Court's Judgment.  The City also argues that based upon BellSouth's current ranking on the Fortune 500 list, it will not be a financial hardship to render payments under the Ordinance.

Finally, with regard to the threatened harm to BellSouth and the public interest, the City claims it "does not enjoy the financial prowess of BellSouth," and while BellSouth continues to charge and collect from citizens in the City without paying sufficient compensation to the City, the City could be using the funds from the 2011 Ordinance to assist with its budget and benefit its citizens.

### C.      The Council's Response

The Council filed a Response in opposition to BellSouth's Motion, adopting and incorporating the Response filed by the City.  (R. Doc. 235).

### D.      BellSouth's Reply

BellSouth filed a Reply in further support of its Motion.  (R. Doc. 238).  BellSouth reiterates its arguments in support of the claims that: the City is not entitled to additional compensation for BellSouth's use of the City's rights-of-way, the 2011 Ordinance violates the Contracts Clause, and the 2011 Ordinance violates the Equal Protection Clause.

## III.   LAW AND ANALYSIS

### A.      Preliminary Injunction

In the Fifth Circuit, a party must establish the following to be entitled to a preliminary injunction:

> (1) 'a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the

threatened injury to plaintiff outweighs the threatened harm the injunction may do to the defendant, and (4) that granting the preliminary injunction will not disserve the public interest.' *Kennedy v. Potter*, 344 Fed. App'x 987 (5th Cir. 2009)(quoting *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)); *accord Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250, 252-53 (5th Cir. 2009).

"A preliminary injunction is 'an extraordinary and drastic remedy.'" *Id*. "The party with the burden must 'clearly carry the burden of persuasion.'" *Id*. The Court will now address each of the requirements for preliminary injunction as applied to the present case, and then consider procedural issues raised by the briefs, particularly the *sua sponte* issue of whether a stay is appropriate and City's request for certification to the Louisiana Supreme Court.

### B. Substantial Likelihood BellSouth Will Prevail on the Merits

As noted above, BellSouth argues it has a substantial likelihood of prevailing on the merits of its four claims. The Court will address each claim in turn.

#### 1. *The 2011 Ordinance Violates* Great Southern *& This Court's Prior Ruling*

BellSouth claims it has a substantial likelihood of prevailing on its claim that the 2011 Ordinance violates *Great Southern* and this Court's prior ruling. BellSouth interprets *Great Southern* as holding the City cannot impose any additional compensation obligations upon it for use of the City's rights-of-way, other than that required by the 1879 Franchise Ordinance, and claims that the 2001 Settlement Agreement and this Court's previous rulings in the 2009 case reaffirmed this holding. According to BellSouth, by requiring it to pay to the City five-percent of certain gross revenues for its benefits related to its use of the City's rights-of-way, the 2011 Ordinance is directly violating the jurisprudence and private agreements. BellSouth notes it has appealed the Court's holding that it owes unjust enrichment damages to the City for the benefit it has received post-2006 for its use of the City's rights-of-way, and argues this "benefit" is the

-10-

same as that conferred by the 1879 Franchise Ordinance, and thus it cannot be charged more compensation for this use.

In response, the City argues BellSouth cannot overcome its burden of demonstrating it has a substantial likelihood of prevailing on the merits of this claim.  The City interprets *Great Southern* as concerned with maintaining the *status quo* between the parties with regard to BellSouth's use of the City's rights-of-way, and claims that *Great Southern*, if enforced as interpreted by the Court, would grant BellSouth an unconstitutional donation of public property. The City also argues the 2011 Ordinance was drafted to avoid conflict with *Great Southern* and the 1879 Franchise Ordinance, specifically excluding from compensation BellSouth's benefits granted by this case and Ordinance.  It also indicates the 2011 Ordinance is an attempt to convert the unjust enrichment payments ordered by the Court into legislation.

The 2011 Ordinance expressly states it is seeking compensation for benefits "in excess" of those granted by the 1879 Franchise Ordinance, but acknowledges such benefits are "in connection" with BellSouth's use of the City's rights-of-way.  *See* (R. Doc. 2-2)(Case No. 11-2116).  By this plain language, the 2011 Ordinance in effect carves out *Great Southern*, avoiding a conflict with this case and the Court's interpretation thereof.  It appears, and the City has said insomuch, that the City is seeking to create a franchise obligation based upon the Court's order requiring BellSouth to pay unjust enrichment damages to the City for the benefits it receives from operating in the City and as contemplated by the 2001 Settlement Agreement.  Thus, for the Court to find BellSouth has a substantial likelihood of prevailing on the merits would be to essentially recant its prior decision in the 2009 litigation.  The Court is not willing to do so, nor would it have jurisdiction to do so since the issue of unjust enrichment damages is on appeal to

the Fifth Circuit pursuant to a Notice of Appeal filed by BellSouth.  *See Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)("[A]s a general matter, a notice of appeal 'divests the district court of its control over those aspects of the case involved with the appeal.'").

Additionally, the very issues upon which BellSouth bases its argument have been cross-appealed by the City and Council.  These are: (1) whether *Great Southern* precludes the City from imposing new or more onerous consideration upon BellSouth for the rights granted to BellSouth under the 1879 Franchise Ordinance, (2) whether BellSouth has breached the 1879 Franchise Ordinance, (3) whether the City has a right to terminate the 1879 Franchise Ordinance, and (4) whether the 2001 Settlement Agreement precludes the City from raising arguments involving the 1879 Franchise Ordinance.  *See* (R. Docs. 223, 224).  This cross-appeal also compromises BellSouth's "substantial" chance of prevailing on the merits of this claim.  While this Court did hold, as noted by BellSouth, that *Great Southern* prevents the City from imposing additional consideration upon BellSouth for its use of the City's rights-of-way granted by the 1879 Franchise Ordinance, the Fifth Circuit may disagree.  Therefore, the Court finds BellSouth has not demonstrated a substantial likelihood of prevailing on the merits of this claim.

> 2.   *The 2011 Ordinance Violates the Contract Clauses of the United States & Louisiana Constitutions*

BellSouth next argues the 2011 Ordinance violates the contract clauses of the United States and Louisiana constitutions.  According to BellSouth, *Great Southern* held that the 1879 Franchise Ordinance and Act 124 created irrevocable contracts between it and the City, and by enacting the 2011 Ordinance the City has impaired these contractual rights.

In response, the City argues the 2011 Ordinance does not affect BellSouth's rights under the 1879 Franchise Ordinance as recognized by *Great Southern*, but rather addresses separate

benefits BellSouth possesses, free of contract with the City, and which this Court awarded unjust enrichment compensation therefor.  It further argues, that even if the 2011 Ordinance infringed upon BellSouth's contractual rights under the 1879 Franchise Ordinance, such does not rise to the requisite level of substantial impairment.

The Contract Clause of Article I, Section 10 of the United States Constitution provides "[n]o State shall...pass any...Law impairing the Obligation of Contracts.[1]"  "The Supreme Court has emphasized, however, that the absolute language of the Contract Clause does not create an absolute prohibition; a State must be given some accommodation in passing laws 'to safeguard the vital interests of its people.'"  *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 503-04 (5th Cir. 2001).  The Court has established a three-part test for determining whether a violation of the Contract Clause has occurred.  *Id*. at 504.

> In sum, the court must first determine whether the impairment of the contract is substantial and the degree of that impairment.  If the impairment is not substantial, there is no claim under the Contract Clause.  The court must next assess the strength of the State's justification for the impairment.  The justification must identify a public purpose that is significant and legitimate.  If the State fails to provide such a justification, the impairment violates the Contract Clause.  Finally, the court must compare the impairment and the justification to determine whether the impairment is 'reasonable and necessary.'  The degree of deference shown the legislature's judgment on this question depends on whether the government has impaired contracts to which it is a party.  *Id*. at 504-06 (internal citations omitted).

In the 2009 case, this Court upheld *Great Southern's* recognition of the 1879 Franchise

---

[1]Article I, Section 23 of the Louisiana Constitution similarly provides that "[n]o...law impairing the obligations of contracts shall be enacted."  The Louisiana Supreme Court has adopted the federal analysis for determining whether a violation of the Contract Clause has occurred.  *See United Teachers of New Orleans v. State Bd. of Elementary & Secondary Educ.*, 2007-0031(La. App. 1 Cir. 3/26/08); 985 So. 2d 184, 193-94.  Thus, the Court need carry-out only a single contract clause analysis for both the state and federal claims.

-13-

Ordinance and Act 124 as creating irrevocable contracts between BellSouth and the City by which BellSouth was granted the right to use the City's rights-of-way in exchange for certain consideration, consideration which cannot be increased or made more onerous. *See* (R. Docs. 143, 192). The 2011 Ordinance requires BellSouth pay compensation to the City for its benefits related to its use of the City's rights-of-way, that is, in addition to the compensation required by the irrevocable contracts. *See* (R. Doc. 2-2)(Case No. 11-2116). Thus, the 2011 Ordinance does not impair any contractual rights. For the Court to conclude the 2011 Ordinance violates the contract clauses would be in effect for the Court to declare certain of its critical rulings in the 2009 litigation incorrect, specifically the ruling that the City is entitled to unjust enrichment damages for BellSouth's benefit related to operation in the City, independent of its benefit under the 1879 Franchise Ordinance. Again, the Court stands by its previous ruling and lacks jurisdiction to reconsider this ruling since BellSouth has elected to appeal the Court's 2009 unjust enrichment decision. *See Griggs*, 459 U.S. at 58.

Additionally, certain crucial issues involved in BellSouth's contract clause claims, particularly whether the 1879 Franchise Ordinance creates an irrevocable contract, have been appealed by the City, *see* (R. Docs. 223, 224), placing any conclusions previously made by the Court at jeopardy and further rendering BellSouth's success at prevailing on the merits of this claim less than "substantial." Thus, BellSouth has not satisfied its burden of demonstrating a substantial likelihood of prevailing on the merits of its contract clause claims.

      3.      *The 2011 Ordinance Takes BellSouth's Private Property Without Just Compensation*

BellSouth next argues there is a substantial likelihood that it will prevail on its claim that the 2011 Ordinance takes its private property without just compensation, in violation of the Fifth

Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, and the similar provision in the Louisiana Constitution.  According to BellSouth, it already has the right to use the City's rights-of-way and operate its business in the City, and it pays the City compensation and occupational license tax, respectively, for such benefits; thus, any additional compensation obligation would be in exchange for benefits for which it already pays.

In response, the City argues BellSouth cannot show a substantial likelihood of success on the merits because the 2011 Ordinance does not take BellSouth's private property.  According to the City, BellSouth's argument fails because it cannot demonstrate the 2011 Ordinance requires it to pay compensation for the benefits it already possesses under the 1879 Franchise Ordinance, especially since the 2011 Ordinance specifically excludes the 1879 Franchise Ordinance benefits and such argument is contrary to the Court's previous rulings in the 2009 case.  The City notes that up until 2006, BellSouth was paying the City substantial sums annually for the same benefits recognized in the 2011 Ordinance, and thus it is inconsistent for BellSouth to now argue these same reinstated payments constitute unconstitutional takings.

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not 'be taken for public use, without just compensation.'"  *Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528, 536 (2005)(internal citation omitted).  The party challenging the governmental action as an unconstitutional taking "bears a substantial burden."  *E. Enters. v. Apfel*, 524 U.S. 498, 523 (1998).  When the alleged taking

involves intangible property[2], courts generally apply an *ad hoc* analysis of the following three factors: (1) the economic impact of the regulation; (2) the owner's investment-backed expectations; and (3) the character of the government's regulatory action. *See id.* at 529-37; *Wash. Legal Found. v. Tex. Equal Access to Justice Found.*, 293 F.3d 242, 245-46 (5th Cir. 2002).

Similarly, Louisiana Constitution, Article I, Section 4, "provides that property shall not be 'taken or damaged' by the state or its political subdivisions except for public purposes and with just compensation paid to the owner." *Accardo v. Chenier Prop. Partners, LLC*, 2011-0153 (La. App. 1 Cir. 6/15/11); 2011 WL 2420183, at *4. To determine whether a taking has occurred under the Louisiana Constitution, "the court must: (1) determine if a right with respect to a thing or an object has been affected; (2) if it is determined that property is involved, decide whether the property has been taken or damaged in a constitutional sense; and (3) determine whether the taking or damaging is for a public purpose." *Id.*

Here, because the 2011 Ordinance facially requires compensation for benefits *independent* of those which BellSouth possesses pursuant to the 1879 Franchise Ordinance,

---

[2]It is not entirely settled under the law as to whether an obligation to pay money can constitute an unconstitutional taking. *See E. Enters. v. Apfel*, 524 U.S. 498 (1998)(Kennedy, J., concurring in judgment and dissenting in part). "'It is settled, however, that the framework of state law governs what is a property interest compensable under the Fifth Amendment.'" *Maloney Gaming Mgmt., LLC v. Parish of St. Tammany*, 2010 WL 5023074, at *6 (E.D. La. Sept. Sept. 9, 2010), and "under Louisiana state law, money is property that cannot be deprived by the state absent due process." *Woodard v. Andrus*, 419 F.3d 348, 354 (5th Cir. 2005)(citing *State v. Spooner*, 520 So. 2d 336, 338 (La. 1988), *superseded by constitutional amendment on other grounds by* La. Const. art. 1, §4(E-D)). Accordingly, because BellSouth is not required at this stage of the litigation to actually prove the merits of its takings claim, the Court will assume for purposes of the present Motion that the compensation required by the 2011 Ordinance constitutes "property" in the takings context.

BellSouth is not being "double-charged" for its rights to use the City's rights-of-way under the 1879 Franchise Ordinance.  To find otherwise would contravene this Court's rulings in the 2009 litigation.  BellSouth appears to ask the Court to contradict its prior rulings, but because BellSouth itself appealed these rulings, the Court lacks jurisdiction to do so.  *See Griggs*, 459 U.S. at 58.  Further, because of the City's own appeal to the Fifth Circuit, the factual findings upon which BellSouth's takings arguments depend could change, further rendering BellSouth's ability to prevail on its takings argument less than substantial.

4.    *The 2011 Ordinance Violates the Equal Protection Clauses of the United States & Louisiana Constitutions*

BellSouth also argues there is a substantial likelihood it will prevail on its claim that the 2011 Ordinance violates the equal protection clauses of the United States and Louisiana constitutions because it has been treated differently than other similarly situated businesses in being required to pay compensation to the City under this Ordinance.  In response, the City contends it has attempted to treat BellSouth the same as other telecommunications providers by applying the OGA to govern the rights and obligations between the parties.  According to the City, the OGA applies to all telecommunications operators entering the New Orleans market, and any differential treatment of BellSouth is a result of its refusal to abide by the OGA.

The Equal Protection clause of the U.S. Constitution provides, "no state shall...deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV.  This "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  The Louisiana Constitution also

-17-

contains an equal protection clause[3].  *See* La. Const. art. I, Sec. 3.

A single plaintiff may bring a successful equal protection claim "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."  *City of Cleburne*, 473 U.S. at 440.  "When...economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes."  *Id.* (internal citations omitted).

In applying this law to the present case, the Court recognizes BellSouth is the only telecommunications provider subject to the 2011 Ordinance and who pays the City compensation pursuant to the 1984 Concession Agreement for its rights under the 1897 Franchise Ordinance. The Court also recognizes that other local telecommunications providers, such as Cox Communications, pay nothing for use of the rights-of-way, or are subject to the OGA and pay no additional payments.  However, it is undisputed that Cox is subject to its own franchise and pays nothing for its use of the rights-of-way because it is also a cable provider who under the law is

---

[3]"The guarantees of equal protection under the federal and [Louisiana] state constitutions differ, and therefore usually require separate analysis as to whether each has been violated. However, where no fundamental or express constitutional right or 'suspect' class (such as race or religion), nor any other enumerated class...is alleged as the basis for discrimination, the use of another classification is subject to the minimal or lowest level of scrutiny under the guarantees of both constitutions.  Such a classification is unconstitutional only if proven to be not rationally related to any legitimate state interest."  *Menard v. La. High Sch. Athletic Ass'n*, 2009-0800, p.8 (La. App. 1 Cir. 12/23/09); 30 So. 3d 790, 795 (internal citations omitted).  Thus, the Court need not conduct a separate analysis under Louisiana's Equal Protection Clause.

prevented from being charged for use of the City's rights-of-way.  It is also undisputed that the City has sought to subject BellSouth to the OGA, like other alleged telecommunications providers, but that BellSouth has refused and this Court has concluded BellSouth is not required to comply with the OGA.  These facts demonstrate that BellSouth, Cox, and these other unnamed, alleged telecommunications providers are not "similarly situated" in every material respect for purposes of equal protection.  *See e.g. Vineyard Invs., LLC v. City of Madison*, 2011 WL 3911071 (5th Cir. 2011); *Ciraulo's Lucky Palace v. City of San Jose*, 81 F.3d 167 (9th Cir. 1996).  Even if these telecommunications providers were sufficiently similarly situated, the reasons for the differential treatment pass the low threshold of the applicable rational basis test. The City has explained sufficiently why it treats each telecommunications provider differently based upon their individual histories and services.  This is not an "irrational and wholly arbitrary" difference in treatment such as that in *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000), upon which BellSouth relies.

**C.      Remaining Preliminary Injunction Requirements**

Because BellSouth has not sustained its burden of demonstrating a substantial likelihood of prevailing on the merits on any of its claims, it is not entitled to a preliminary injunction and the Court need not address the remaining arguments pertaining to the three other requirements for preliminary injunction.  However, the Court does find it unlikely BellSouth would prevail on these remaining requirements either, especially given that the harm BellSouth faces by the 2011 Ordinance is merely monetary and there is no showing that the City is insolvent or would not be able to satisfy a monetary judgment.  *See Sampson v. Murray*, 415 U.S. 61, 90 (1974); *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecutoria*, 762 F.2d 464, 472-73 (5th Cir. 1985);

*Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981); 9 Charles

Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice and

Procedure § 2948.1 (2d ed. 2011).

**D.      Stay Pending Appeal**

The foregoing analysis raises another question not directly addressed by the parties, that

is, whether it is appropriate for the Court to further proceed with the present litigation given that

the merits involved therein are overlapping with those on appeal and for the most part dependant

upon the Circuit's decision.  The Court has already found that for purposes of the present Motion

this appeal renders BellSouth's request for preliminary injunction untenable.  If this Court

reaches a decision on the merits of BellSouth's other claims, the decision of the Fifth Circuit

could be contradictory.  For this reason, it is in the interest of judicial economy for the Court to

stay the entire case until resolution of the appeal.  Indeed, a district court has great discretion to

stay a declaratory judgment action such as the present.  *See Wilton v. Seven Falls Co.,* 515 U.S.

277 (1995); *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994). and one of the factors

for a court to consider in issuing such a stay is judicial economy.  *See St. Paul Ins.,* 39 F.3d at

91.  Accordingly, the Court finds it appropriate to stay the present matter until resolution of the

appeal of the 2009 litigation.

**E.      Certification to the Louisiana Supreme Court**

The City requests that the Court certify to the Louisiana Supreme Court the question of

*Great Southern's* current applicability and reasonableness in today's society.  However, under

Rule XII of the Supreme Court of Louisiana, only the U.S. Supreme Court and federal circuit

courts of appeal can certify questions to the Louisiana Supreme Court.  Thus, as a district court,

-20-

this Court lacks authority to certify the City's question; the City will have to request the Fifth Circuit to do so.  Nonetheless, the Court finds this to be an advisable course of action, given that it has its own apprehensions about the applicability and interpretation of *Great Southern* in the contemporary world, but has been restrained by its holding.

## IV.   CONCLUSION

For the foregoing reasons IT IS ORDERED that BellSouth's Motion for Preliminary Injunction (R. Doc. 2)(Case No. 11-2116) is DENIED and Case No. 11-2116, *BellSouth Telecommunications, LLC v. New Orleans City*, consolidated with Case No. 09-151, *New Orleans City v. BellSouth Telecommunications, Inc*. is STAYED until resolution of the issues appealed and cross-appealed to the Fifth Circuit in Case No. 09-151.

New Orleans, Louisiana this 26th day of October 2011.

_____
U.S. District Judge

-21-